LAWRENCE M. PUCCI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pucci v. Commissioner
Docket No. 11005-82.
United States Tax Court
T.C. Memo 1984-672; 1984 Tax Ct. Memo LEXIS 7; 49 T.C.M. (CCH) 415; T.C.M. (RIA) 84672; December 27, 1984. Lawrence M. Pucci, pro se. Edith E. Siler, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in the amount of $7,299 in petitioner's 1975 Federal income tax. The issue before the Court is the deductibility of an amount of $10,500 as a bad debt deduction under section 166, [1] as a deduction for petitioner's distributive share of a loss *10 incurred by TRD Limited, a limited partnership in which petitioner allegedly had an interest, as a deduction for investment interest expense, or as a deduction for an ordinary and necessary business expense. FINDINGS OF FACT A few facts have been stipulated and are so found. The stipulation of facts and joint exhibits 1-A and 2-B are incorporated herein by this reference. Petitioner resided in Chicago, Illinois, at the time he filed his petition herein. Petitioner timely filed his 1975 Federal individual income tax return (Form 1040). Petitioner's 1975 return lists his occupation as "executive." He received wages, salaries, tips, and other employee compensation during 1975 in the amount of $80,000, $40,000 each from Pucci Importations and Pucci Corporation. During taxable year 1975, petitioner received dividend income in the amount of $138,281.92, and interest income in the amount of $9,076.26. The schedule attached to petitioner's *11 1975 return listing the corporations from which petitioner received dividends runs to three pages. On the Schedule E (Supplemental Income Schedule) attached to his 1975 return, petitioner claimed a deduction in the amount of $10,500 for a loss from "TRD Trust." In the notice of deficiency dated April 9, 1982, respondent disallowed this loss deduction, labelling it "TRD Trust-Investment Interest Expense." In his petition to this Court, petitioner asserted that he had paid interest which was allowable as an ordinary and necessary business expense. These statements suggest that this case involves the deductibility of a loss resulting from interest expenses purportedly incurred by a trust in which petitioner had an interest. However, the scant evidence of record focuses on a loan petitioner claims he made and a partnership interest he allegedly received in repayment of that loan. [2]
*12 Petitioner asserts that sometime during 1974 a group of Chicagoans including himself loaned $40,000 to a "man in Europe." Petitioner claims that he provided $10,000 of the $40,000 loaned to that individual. The group was headed by one Ronald Richter (Mr. Richter). At sometime before the end of 1975, the man in Europe allegedly gave the group title to two automobiles, [3] and repaid the $40,000 loan to Mr. Richter and one of his associates. Thereafter, Mr. Richter's associate went to Spain. [4] According to petitioner, Mr. Richter felt responsible for repaying petitioner his $10,000, and on January 23, 1976, he gave petitioner a certificate, [5] dated December 31, 1975, that purportedly evidenced an ownership interest in TRD Limited (TRD), an Illinois limited partnership. Petitioner testified that he accepted the partnership interest as repayment of his $10,000 loan and considered the partnership interest an investment. Although pressed by the Court to supply details as to the transaction, petitioner did not present any further testimony explaining the nature of the transaction or the basis of the claimed loss deduction, nor did he produce any competent, probative *13 documentary evidence corroborating his testimony. [6] See n. 2 above. *14 OPINION There is no evidence whatsoever to suggest that petitioner ever paid interest in the amount of $10,500 or that he paid that amount for any other purpose that might entitle him to a business expense deduction. From the scant evidence produced by petitioner, we can only surmise that he is seeking either a bad debt deduction or a deduction for his distributive share of a loss incurred by TRD Limited (TRD). Under either theory, petitioner bears the burden of proving he is entitled to the deduction claimed. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Bad Debt Deduction
Generally, section 166(a)(1) allows a deduction "for any debt which becomes worthless within the taxable year." According to section 1.166-1(c), Income Tax Regs.: [7]
Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166. * * * Petitioner has failed to prove the existence of any bona fide debt. *15 Petitioner failed to produce any probative evidence, even something as simple and routine as a cancelled check or a receipt, to support his claim that he loaned $10,000 to a "man in Europe." Petitioner's vague, self-serving, and wholly uncorroborated testimony on this point is woefully inadequate to establish the existence of a bona fide debt for purposes of section 166. Moreover, petitioner's purported receipt of an interest in TRD as repayment of his alleged "loan" suggests that any funds he provided may well have been provided as a contribution to capital rather than as a loan creating a bona fide debt. See sec. 1.166-1(c), Income Tax Regs.
Furthermore, in order to be allowed a bad debt deduction under section 166, petitioner must establish that the debt in question became "worthless within the taxable year." See secs. 166(a)(1) and (d)(1). All pertinent evidence is to be considered in determining whether a debt is worthless. Sec. *16 1.166-2(a), Income Tax Regs. Even if we accepted petitioner's self-serving and uncorroborated testimony and found that he actually loaned someone $10,000, petitioner has totally failed to establish that the debt became worthless during his 1975 taxable year. On the contrary, petitioner's contention that he received an interest in TRD on January 23, 1976, in repayment of the alleged loan vividly demonstrates that the debt had not become worthless during the taxable year 1975. Indeed, the debt must have had a value at the end of 1975 at least equal to the value of the interest in TRD that petitioner allegedly received in early 1976. Thus, petitioner is clearly not entitled to a bad debt deduction under section 166 for the taxable year 1975. [8]
*17 Distributive Share of Partnership Loss
Under section 702(a), each partner must take into account his distributive share [9] of a partnership's taxable income or loss in determining his personal tax liability. Petitioner has simply failed to demonstrate that he was in fact a partner in TRD at any time during 1975. The only documentary evidence offered by petitioner to support his partnership claim was a certificate purportedly evidencing his ownership interest in the partnership. That certificate was dated December 31, 1975, but admittedly was not received by petitioner until January 23, 1976. Petitioner furnished no authentication for this document despite the Court's prior admonishment that it would not be admitted into evidence without proper authentication. The certificate was therefore not received into evidence. Petitioner's testimony, even when viewed in the light most favorable to him, is insufficient to prove that he was a partner in TRD during his 1975 taxable year. Therefore, petitioner is not entitled to deduct in his 1975 taxable year any part of any loss TRD may have suffered. *18 Additionally, petitioner presented no evidence demonstrating that TRD actually sustained a loss during its taxable year ending with or within petitioner's 1975 taxable year [10] or that his distributive share of any such loss was allowable under the limitation set forth in section 704(d). [11] Thus, even if petitioner was a partner in TRD during his 1975 taxable year, he has failed to prove that he was entitled to a deduction in such year for any part of TRD's alleged loss. The record does not establish that TRD had a loss in 1975 or in any other year. *19 Petitioner is a sophisticated, well-compensated business executive. Although the Court extended him every opportunity to present evidence as to the transaction underlying his loss deduction (see nn. 2, 5, and 6 above), he refused or failed to do so. He failed to produce any cancelled checks, receipts, or other ordinary documentation of the type a reasonable business person would have to substantiate this purported loan transaction or partnership investment. He gave vague and wholly unconvincing testimony that failed to inform the Court of the facts or theory underlying his claim. In view of petitioner's actions or failure to act, his position in this proceeding borders on being "frivolous or groundless," and therefore grounds for awarding damages to the United States under section 6673. [12] We caution petitioner and other similarly situated taxpayers that given the ever-increasing caseload of this Court, [13] we are becoming less patient with taxpayers such as this petitioner who make no effort to prove their cases and who simply waste their time and that of respondent's counsel and the Court. We are becoming more inclined to award damages under section *20 6673 when the taxpayer's obstinate refusal or obvious inability to produce any evidence supporting his position is such that his continuing to prosecute his case can only be for purposes of delay or such that renders his position frivolous or groundless within the meaning of that statute. However, exercising our discretion under section 6673, we decline to award damages to the United States in this instance and hope that a word to the wise will be sufficient. *21 In conclusion, petitioner has failed to prove he is entitled to the claimed deduction of $10,500 for his 1975 taxable year. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The evidence in this case is sparse and essentially unilluminating. The difficulties stem not from the complexity of the facts or legal principles involved, but from petitioner's apparent unwillingness and/or inability simply to tell the Court the facts as to what happened in the real world. Petitioner either could not or would not articulate and document the events from which the claimed deduction arose. Given petitioner's affluent position in life and his evident sophistication, we found his unwillingness and/or inability to do so incomprehensible. Despite his obvious business acumen, petitioner would have us believe that he lent $10,000 to some unidentified "man in Europe" and then entered into various related transactions. Petitioner afforded us not a shred of probative documentary evidence of any of these transactions. When asked at trial about ordinary documentation of the type any reasonable business person would have for such transactions, petitioner gave argumentative and evasive responses. Petitioner suggested that he had already provided respondent's agents with all relevant documentation during the audit, but the record shows that was not the fact. Petitioner also complained that due to the length of time between the tax year for the relevant transactions (1975) and the trial date (1984), his records had been either misfiled or destroyed. Petitioner does not, however, contend that the statute of limitations bars assessment of the deficiency. He signed consents extending the period for assessment. Sec. 6501(d)(4). Petitioner's problems in this regard are of his own making and, in any event, do not relieve him of his burden of proof. Finally, petitioner asserted that if given more time, he could present further documentation justifying the claimed deduction. In response to petitioner's assertion that with more time he could present further evidence regarding his deduction, the Court noted that petitioner had had ample time to prepare for trial. His petition was filed on May 24, 1982, and the tial was held on March 6, 1984. Petitioner was served with notice of the trial date almost three months before such date. Nevertheless, the Court kept the record open for a period of 45 days after the trial to permit petitioner to present any documentary evidence substantiating the claimed deduction to respondent's counsel so that the parties could submit a supplemental stipulation. No such supplemental stipulation was forthcoming, and the Court closed the record on April 20, 1984.↩
3. The significance, if any, of the automobiles is unexplained by the record. Petitioner's confusing testimony suggested that he in fact owned these automobiles. ↩
4. There is an intimation that the associate may have absconded with some or all of the $40,000, but, if so, the fact is not clearly disclosed by the record. ↩
5. A copy of such certificate was attached as an exhibit to the stipulation, but respondent reserved his right to object to its introduction into evidence. The document was never properly authenticated, and therefore was not received into evidence. ↩
6. Petitioner offered into evidence a copy of a letter dated January 23, 1976, from Mr. Richter to petitioner that recited that petitioner was entitled to 3,500 ownership units in TRD and $10,000 in tax write-offs for 1975. Petitioner also offered into evidence another letter from Mr. Richter to petitioner the import of which is not disclosed by the record. Mr. Richter was not present to testify at the trial, and these letters were excluded from evidence because of their hearsay nature. See also nn. 2 and 5, supra.↩ Although repeatedly urged by the Court to testify as to the facts within his own personal knowledge, petitioner either could not or would not do so.
7. Section 1.166-1(c), Income Tax Regs., was amended after the taxable year in issue by T.D. 7902, 1983-2 C.B. 45↩. The amendment inserted two additional sentences into the quoted language, but did not otherwise alter it.
8. In respondent's discretion a deduction may be allowed for a partially-worthless debt, but the deduction may not be in an amount in excess of the part of such debt charged off within the taxable year. Sec. 166(a)(2).Such a deduction for a partially-worthless debt is allowable to individuals only for a business debt, not for a nonbusiness debt. Sec. 166(d)(1). See sec. 166(d)(2) (defining nonbusiness debt). Petitioner has not presented any evidence that his alleged loan was a business debt rather than a nonbusiness debt. Sec sec. 166(d)(2). Furthermore, petitioner has not shown that he charged off any part of the loan, or that respondent abused his discretion in not allowing as a deduction any part of the loan as a partially-worthless debt.See Stranahan v. Commissioner,42 F. 2d 729 (6th Cir. 1930), cert. denied 283 U.S. 822↩ (1931). Thus, petitioner is not entitled to deduct for taxable year 1975 any part of his alleged loan as a partially-worthless debt under section 166(a)(2).
9. See section 704 for determining a partner's distributive share.↩
10. See sec. 706(a). ↩
11. In pertinent part, section 704(d) provides that "[a] partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred." A partner's adjusted basis in his partnership interest is determined under section 705. Although petitioner's alleged transfer of $10,000 to "a man in Europe" and his subsequent receipt from Mr. Richter of an interest in TRD could be viewed as giving him an original adjusted basis of $10,000 in his partnership interest (sec. 722 or secs. 742 and 1012, depending on whether the transfer is characterized as a contribution to the partnership in exchange for the interest or as a purchase of the interest), petitioner has presented no evidence of the adjustments to such basis required by section 705. Thus, petitioner has failed to establish his adjusted basis in his purported interest in TRD, an element that is necessary in determining the allowability of his distributive share of any partnership loss under section 704(d).↩
12. As applicable to any action or proceeding commenced after December 31, 1982, or pending on November 15, 1984, section 6673 provides as follows: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. See sec. 160 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 696,     C.B.    ,    ; sec. 292(b) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 574, 1982-2 C.B. 462↩, 547. 13. See H. Rept. No. 97-404 to accompany H.R. 4961 (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248) (1982), p. 11.↩